ORDERED in the Southern District of Florida on **MAY 05 2009**



_A. Jay Cristol_
A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>EPIXTAR CORP.,<br><br>Debtor.<br>_____ / | CASE NOS.  05-42040-BKC-AJC through<br>05-42049-BKC-AJC<br>(Jointly Administered)<br><br>CHAPTER 11 |
| EPIXTAR CORP.,<br><br>Plaintiff,<br><br>v.<br><br>MCCLAIN & COMPANY, L.C.,<br>CBIZ, INC., and<br>MICHAEL DESIATO,<br><br>Defendants.<br>_____ / | ADV. No.  08-01208-AJC |

**MEMORANDUM ORDER DETERMINING PROCEEDING TO BE A CORE
PROCEEDING PURSUANT TO JUDGE SEITZ'S ORDER DATED OCTOBER 10,
2008, TO DECLARE ADVERSARY PROCEEDING
<u>NON-CORE AND FOR TRANSFER TO DISTRICT COURT</u>**

**THIS CAUSE** came before the Court upon consideration of the Defendants' Motion To Withdraw The Reference Pursuant To Judge Seitz's Order Dated October 10, 2008, To Declare Adversarial Proceeding Non-Core And For Transfer To District Court (DE 221). The Court heard argument at a hearing on January 21, 2009. The parties agreed at the hearing that the only issue for determination by this Court at this time is whether the proceeding is a core or non-core proceeding. For the reasons stated below, the Court, having considered the parties' submissions and arguments of counsel, finds that this is a core proceeding.[1]

The Plaintiff, Epixtar Corp. ("Epixtar") is the debtor in this bankruptcy proceeding. On March 18, 2008, Epixtar filed this adversary complaint against the Defendants, alleging professional malpractice against all the Defendants,[2] and breach of contract against McClain. The Defendant, McClain & Co., L.C. ("McClain") is an auditing firm, located in Miami. The Defendant CBIZ, Inc. ("CBIZ"), is a publicly traded financial services company, with its headquarters in Cleveland, Ohio. The complaint alleges that CBIZ exercised control over the other Defendants who acted here as its agents. (Complaint, ¶¶ 5, 11, 57.) The Defendant Michael DeSiato is a managing principal of

---

[1] An individualized decision whether to withdraw the reference for purposes of trial, which will hinge, in part, on whether a Defendant has waived the right to jury trial, will be made, as ordered by the District Court in its October 10, 2008 Order, (DE 12), at the conclusion of all pretrial proceedings before this Court.

[2] On August 20, 2008, Epixtar filed a voluntary notice of dismissal of Defendant William G. Urban II from the compalint. (DE 95). On January 31, 2009, Epixtar filed its motion for leave to amend the complaint, which adds a claim for tortious interference with contract against CBIZ, Inc. DeSiato is not named in this amended complaint. (DE 281.) The motion was heard March 3, 2009 and thereupon granted.

McClain. At the hearing, defense counsel stated DeSiato also is an employee of CBIZ.

I. **The Material Facts In The Record Of The Bankruptcy Proceeding.**[3]

1. The Plaintiff Epixtar is a call center company which, through its subsidiaries, operated three call centers in the United States and one in the Philippines. It is a public company which, until June 12, 2006, was listed for trading on the NASDAQ Bulletin Board. (Complaint, ¶ 1.)

2. On October 6, 2005, Epixtar and related companies (collectively "Epixtar"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code. The debtors have continued to operate their businesses as debtors-in-possession. No trustee or examiner has been appointed. The bankruptcy proceeding is ongoing. (Complaint, ¶¶ 20 -21.)

3. On February 10, 2006, Epixtar filed its application nunc pro tunc to January 10, 2006, to retain McClain as auditors to conduct audit and review work of its financial statements in connection with its filings to the SEC. (McClain had begun work on January 10th to prepare the 10-Q filing for the third quarter of 2005.) The application characterized the retention as "**a core proceeding** pursuant to 28 U.S.C. § 157(b)." (Emphasis added. Exhibit "B,"[4] pg. 2, ¶ 3.)

4. McClain submitted an Affidavit in support of the Application. (Exhibit "B," pp. 7 - 10.) The affidavit described the nature of the retention, the proposed fee, cost and

---

[3] For the purpose of deciding this issue, the Court will accept the allegations of the Complaint as true.

[4] The citations are to the Exhibits to Epixtar's Response in opposition to Defendants' Motion. (DE 254.)

retainer arrangement, and made the required representations of "disinterestedness." McClain represented that "all amounts paid to McClain during these cases are subject to final allowance by the Court, . . . ." (Id., at pp. 8 - 9.)

5. Also on February 10th, Epixtar filed an application to retain Michael Sahr and CBIZ McClain Accounting, Tax & Advisory of South Florida, LLC ("CBIZ SF")[5] as accountants to prepare its tax returns. (Exhibit "C.") This Application also characterized the matter as "**a core proceeding** pursuant to 28 U.S.C. § 157(b)." (Emphasis added. Exhibit "C," pg. 2, ¶ 3.)

6. An affidavit on behalf of CBIZ SF was submitted by Michael Sahr, a member of the firm. The affidavit described the nature of the retention, the proposed fee, cost and retainer arrangement, and made the required representations of "disinterestedness." Sahr represented that "all amounts paid to CBIZ during these cases are subject to final allowance by the Court, . . . ." (Id., at pp. 6 - 7.)

7. Also on February 10, 2006, McClain filed its "First Interim Fee Application," seeking fees of $24,847.50.

8. On March 15, 2006, the Court entered its Orders approving retention of McClain as Epixtar's auditors and CBIZ SF as its accountants. (Exhibits "F," and "G," respectively.) The McClain Order provided that McClain was authorized to receive the $15,000 retainer. Both Orders further provided that "this Court shall retain jurisdiction to hear and determine *all* matters arising from implementation of this Order." (Exhibits "F"

---

[5] CBIZ SF is a wholly-owned subsidiary of Defendant CBIZ. Defendant CBIZ did not appear in the Chapter 11 proceeding. However, as noted above, supra, p. 3, the Complaint alleges that CBIZ controlled McClain who acted here as its agent.

and "G.")

9. Also on March 15th, the Court granted McClain's interim fee application, filed on February 10th, in the amount of $19,590. (D.E. 266, Exhibit "H.")

10. As alleged in the Complaint, McClain was, during this period, proceeding with its audit work. Then, on March 23, 2006, McClain notified Epixtar that it had learned (in February, a month earlier) that Epixtar's COO had pleaded guilty to a charge of sexual assault. Epixtar, after investigation and consultation, concluded that it would not discharge the COO. (Complaint, ¶¶ 32 - 35.)

11. The Complaint also alleges that, during the course of the audit, it became clear that Epixtar would require an extension to file its 10-K. Accordingly, on April 3, 2006, Epixtar filed a Form 12b-25 with the SEC, requesting a 15-day extension. The reason it gave was that "new Auditors for the company were unable to complete the financial statements in the prescribed time required for the filing of report." McClain notified Epixtar that that statement was incorrect. McClain was not completing the financial statements; it was auditing them. Epixtar alleges it acknowledged the error and offered to correct the filing in any way satisfactory to McClain and to clarify that McClain was not at fault for the delay. (Complaint, ¶¶ 36 - 38.)

12. The Complaint also alleges that, on April 10, 2006, McClain called Epixtar and notified it, for the first time, that McClain would withdraw and would refuse to issue an audit opinion. (Complaint, ¶¶ 39 - 40.)

13. On April 11, 2006, McClain and CBIZ SF filed an emergency motion to withdraw as Epixtar's "financial professionals." (Exhibit "I.") In the jurisdictional allegation McClain and CBIZ SF stated that the Court had jurisdiction over the motion

pursuant to 28 U.S.C. §§ 157 and 1334 and that, "**This is a core proceeding pursuant to 28 U.S.C. § 157(b).**" (Emphasis added. ¶ 3, Exhibit "I.") The reasons given were the inaccurate statement in the Form 12b-25 and Epixtar's "continued retention of a certain member of Senior Management [i.e., the COO]."

14. On April 13, 2006, Epixtar filed its response, objecting to the motion. (Exhibit "J.")

15. The Court held an emergency hearing on the motion on April 13, 2006. At the conclusion of the hearing, the Court ordered the parties to mediate and scheduled a further hearing for April 24th. (Complaint, ¶¶ 45 - 48.)

16. The mediation took place on April 19th. At the hearing on April 24th, the parties announced the agreement and the Court entered an agreed order, permitting McClain and CBIZ SF to resign on the following terms, among others:

\* \* \* \*

> (4) Nothing in this Order shall be deemed a finding of fact or conclusion of law as to any allegation contained in the Motion or in the response filed by the Debtors.
>
> 5) Nothing in this Order shall be deemed a waiver of any claim, cause of action or defense that either party has or possesses against the other, and all such claims, causes of action and defenses are preserved.
>
> 6) The Court reserves jurisdiction to interpret and enforce the terms and conditions of this Order.

(Exhibit "K," and Complaint, ¶¶ 49 - 50.)

17. Epixtar alleges in its complaint that, as a direct consequence of McClain's withdrawal and its abdication of its professional and contractual obligations, it was unable to timely file its Form 10-K leading to its delisting from trading on NASDAQ. Epixtar alleges that, as a result of the withdrawal and the delisting, it has suffered

Epixtar alleges that, as a result of the withdrawal and the delisting, it has suffered substantial damages. (Complaint, ¶¶ 52 - 53.)

## II. This Is a Core Proceeding.

The bankruptcy court is entrusted with the determination of whether a matter before it is core or non-core. Title 28, Section 157(3) provides, "The bankruptcy judge shall determine, on his own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."

Core proceedings are ones which bankruptcy courts can adjudicate to final binding judgment and which are subject to review by the district court under "normal deferential standards of judicial review." Toledo v. Sanchez, 170 F.3d 1340, 1347 (11th Cir. 1999). On the other hand, in non-core proceedings, bankruptcy courts can only submit proposed findings of fact and conclusions of law, not a final order or judgment, and the district court conducts a de novo review. Id.

Bankruptcy courts have jurisdiction over cases that 1) "arise under title 11," 2) those that "arise in cases under title 11," and those 3) "related to cases under title 11." Core proceedings are defined in 28 U.S.C. § 157(b)(1) as "proceedings arising under title 11, or arising in a case under title 11." "'Arising under' proceedings involve matters invoking a substantive right created by the Bankruptcy Code.'" Toledo v. Sanchez, supra, 170 F.3d at 1345, quoting Wood v. Wood, 825 F.2d 90, 97 (5th Cir. 1987). "Arising in" proceedings are "generally thought to involve administrative-type matters...." (Citation omitted.) Id. As the Court of Appeals further noted, "'arising in' describes administrative matters unique to the management of a bankruptcy estate. 1 Colllier on

Bankruptcy P 3.01[4][c]iv] at 3-29 ." Id., at 1349.

Section 157 (b)(2) provides a non-exhaustive list of categories of core proceedings, including "(A) matters concerning the administration of the estate," and "(O) other proceedings affecting the liquidation of the assets of the estate . . . ." The fact that the proceeding involves the adjudication of state law claims shall not be the basis for a "determination that a proceeding is not a core proceeding . . . ." Section 157(b)(3).

### A. The Defendants Have Admitted This Is A Core Proceeding.

Until now, the Defendants have agreed that this matter is a core proceeding. The applications for retention described the matter as a "core proceeding," and the order authorizing retention of McClain and CBIZ SF stated that "this Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Order." When McClain and CBIZ SF filed their emergency withdrawal motion they, again, alleged that, "This is a core proceeding pursuant to 28 U.S.C. § 157(b)." The Agreed Order permitting their resignations further stated, in part, that, "The Court reserves jurisdiction to interpret and enforce the terms and conditions of this Order."

Having taken the position at earlier stages of the bankruptcy that this is a core proceeding, the Defendants are hard-pressed to argue otherwise at this juncture. Accordingly, the Court concludes this is a core proceeding.

### B. A Malpractice Action Against The Professionals In Bankruptcy Is A Core Proceeding.

A malpractice action by the debtor against a professional retained in the bankruptcy is a core proceeding as it "arises in" the bankruptcy. It directly concerns the

bankruptcy court's supervision of the professionals who are retained in the bankruptcy to provide services to the debtor and who, accordingly, are responsible for performing their duties in the best interest of the debtor's creditors.

The Court of Appeals for the Eleventh Circuit has not specifically considered whether a malpractice action based on conduct in the bankruptcy is a core proceeding.[6] However, it has held that a debtor's actions against professionals retained during the bankruptcy proceeding are core proceedings. In Carter v. Rogers, 220 F.3d 1249 (11th Cir. 2000), the debtor sued the trustee and other court-approved officers of his bankruptcy estate for alleged breaches of their bankruptcy-related duties.[7] The Court of Appeals held that such an action "can only arise in a bankruptcy case. Thus [they] are within the bankruptcy jurisdiction defined by 28 U.S.C. § 1334(b) both as 'arising under' the Code and 'arising in' a bankruptcy case." Id., at 1254.

The leading case analyzing whether a malpractice action against the debtor's professionals is core or non-core is Southmark Corporation v. Coopers & Lybrand, et al., 163 F.3d 925 (5th Cir. 1999). There, the debtor (Southmark) brought a malpractice action against Coopers, the bankruptcy examiner's accountant. Southmark filed the action in state court. Coopers removed the action to federal court which then referred it to bankruptcy court. The bankruptcy court ruled for Coopers on summary judgment.

---

[6] It has addressed other issues relating to a pre-petition malpractice action. See, Johnson, Blakely, et al. v. Alvarez, 224 F.3d 1273, 1279 - 1280 (11th Cir. 2000), holding that such a claim belongs to the estate and not to the debtor individually.

[7] The Court of Appeals specifically noted that for the purposes of its holding the distinction between a "court 'appointed'" officer, such as a trustee, and a "court 'approved'" professional is irrelevant. Id., 220 F.3d at 1251, n.4.

Southmark appealed to the district court, arguing that the bankruptcy court was required to abstain since this was not a core proceeding. The district court affirmed, holding that the malpractice case was a core proceeding.

On appeal by Southmark, the Fifth Circuit affirmed the holding that the malpractice action was a core proceeding. Southmark had argued that it was not a core proceeding on two grounds: 1) its claims arose under state and not federal law and involved its "private rights" against Coopers, rather than restructuring of debtor-creditor relations; and 2) the action was not a proceeding that "by its nature could arise only in the context of the bankruptcy case." Id., at 930.

The Fifth Circuit rejected both of these arguments, which are similar to those raised by the Defendants here. First, the court of appeals held that the "state law origins" of the claim were not dispositive. Section 157(b)(3), as noted above,

> expressly provides that the applicability of state law to a proceeding is insufficient in itself to render it a non-core proceeding. (Citation omitted.) This provision, as Wood explains, recognizes Justice White's sensible observation in Marathon that many truly bankruptcy issues, like the determination of the basis of creditors' claims, turn on state law. Wood, 825 F.2d at 96. That Southmark's claims against the court-appointed accountant for its examiner arose under state law does not prevent them from involving core jurisdiction.

Southmark, 163 F.3d at 930.

The court of appeals next held that Southmark's claims were ones which "could arise 'only in the context of a bankruptcy case,'" noting that it was "somewhat disingenuous for Southmark to attempt to pry these claims out of their bankruptcy setting." Id., at 931. The court of appeals explained why this claim could only arise in a bankruptcy, making it a core proceeding. Its analysis was strikingly similar to that of the Eleventh Circuit in Carter v. Rogers, supra. As it explained,

In this case, the professional malpractice claims alleged against Coopers are inseparable from the bankruptcy context. A <u>sine qua non</u> in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. **The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. Bankruptcy Code provisions describe the basis for compensation, appointment and removal of court-appointed professionals, their conflict-of-interest standards, and the duties they must perform.** (Citations omitted.) Although standards for the conduct of court-appointed professionals, the breach of which may constitute bankruptcy malpractice, are not comprehensively expressed in the statute, the Code need not duplicate relevant, also applicable state law. It is evident that a court-appointed professional's dereliction of duty could transgress both explicit Code responsibilities and applicable malpractice standards . . . .

Supervising the court-appointed professionals also bears directly on the distribution of the debtor's estate. If the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims. . . . A malpractice claim like the present one inevitably involves the nature of the services performed for the debtor's estate and the fees awarded under superintendence of the bankruptcy court; it cannot stand alone.

(Emphasis added.) <u>Southmark</u>, 163 F.3d at 931 - 932.[8]

The court of appeals noted that all other appellate courts considering "professional malpractice claims against court-appointed professionals are indeed core matters." It cited <u>Billing v. Ravin, Greenberg & Zackin, P.A.</u>, 22 F.3d 1242 (3d Cir. 1994); <u>Walsh v. Northwestern National Insurance Co.</u>, 51 F.3d 1473, 1476 (9th Cir.

---

[8] Defendants argue that the malpractice alleged in <u>Southmark</u> was of a sort that could only happen in a bankruptcy proceeding. They argue, by contrast, that the alleged malpractice in this case does not relate to the bankruptcy <u>per se</u>. However, that is not correct. In <u>Southmark</u>, the defendant auditing firm was engaged to evaluate potential causes of action, a function which could easily be performed as well in a non-bankruptcy setting. The court of appeals did not find that it was a function unique to a bankruptcy. As in this case, the malpractice claim was "core," because it concerned the bankruptcy court's supervision of the performance by court-approved professionals of their duties and obligations to the debtor and the estate.

1995); Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 483 n.4 (6th Cir. 1992). Since then, the Fourth Circuit Court of Appeals has also held that a malpractice case arising out of the professional's work in the bankruptcy proceeding is an "arising in" case, i.e., a core proceeding. Grausz v. Englander, et al., 321 F.3 467, 471 - 472 (4th Cir. 2003). See also Heck-Dance v. Cardona-Jimenez, 102 Fed.Appx. 171 (1st Cir. 2004). Furthermore, lower courts considering such malpractice actions have similarly held that they are core proceedings. See, e.g., Simmons v. Johnson, Curney & Fields, P.C., et al., 205 B.R. 834, 841 (Bankr. W.D. Texas 1997); Murphy & Co., Inc., et al., v. First National Bank of Sparta, et al, 213 B.R. 813, 816 - 817 (Bankr. S.D. Miss. 1997); In re Com 21, 2005 U.S. LEXIS 34339, *23 - *24 (N.D. Cal. 2005).[9]

Here, McClain and CBIZ SF were approved by the Bankruptcy Court to perform

---

[9] The cases relied on by the Defendants are not persuasive. A review of the pleadings in In re RDM Sports Group, Inc., 260 B.R. 915, 919 (Bankr. N.D. Ga. 2001)(Motion, at p.12) shows that the complaint relates to pre-petition conduct. While the opinion is not explicit, it is consistent with that conclusion as it states that the "gravamen of the Trustee's complaint is that the defendants should be held liable . . . for their role in causing the Debtors' financial demise." Id., at 918. Rheem Manufacturing Co. v. Cheatham, 132 B.R. 323 (E.D. La. 1991), is a post-petition malpractice action which the bankruptcy court found to be "non-core." However, the basis for that finding is that the claim was brought by a **creditor** against its own counsel. The court noted, agreeing with all of the cases cited above, that if, instead, the claim had been brought by the **debtor** against its counsel "then the claim would be a 'core proceeding. . .'" Id., at 324. In re Melridge, 1990 U.S. Dist. LEXIS 7287 (D.Or. 1990), appears to hold, without any explanation, that a post -petition malpractice action is non-core. However, the two cases which have cited it decline to follow it and specifically hold that post-petition malpractice actions are "core." See In re Com 21, 2005 U.S.Dist. LEXIS 34339, *23 - *24 ((N.D. Cal. 2005); Joe Conte Toyota v. Howell, 1990 U.S.Dist. LEXIS 5890, *5 n.1 (E.D. La. 1997)("The only anomalous case is the unreported In re Melridge, Inc., (citation omitted),in which the court found that claims against attorneys regarding a technical and decided issue were non-core; but that the court had jurisdiction because the claims were related to the bankruptcy.")

auditing and accounting services for the debtor. The Complaint alleges, and this Court therefore accepts as true, that McClain and CBIZ SF were controlled by Defendant CBIZ. They accepted their engagement, with all of the attendant obligations to the debtor and the estate in the performance of their obligations. This malpractice action goes to the heart of their performance of their duties in the bankruptcy case. It raises precisely the kinds of issues which a bankruptcy court is charged with deciding, i.e., whether the professionals whose retention it approved, acted in a manner consistent with their obligations to the debtor and the estate. For that reason, this action is a core proceeding.

### C. This Is A Core Proceeding Against All The Defendants.

The Defendants argued, for the first time, at the hearing that the determination whether the proceeding is core or non-core must be made separately as to each defendant.[10] As stated herein, the Court has determined that, based on the nature of the claims as against each individual defendant, this is a core proceeding.

Title 28, Section 157(3) requires that the bankruptcy judge make the determination based on an examination of the nature of the proceeding. As it states, the determination is to be made "whether a proceeding is a core proceeding under this section or is a proceeding that is otherwise related to a case under title 11." Courts do not typically make this determination in a multi-defendant case, defendant by

---

[10] In their motion and reply to Epixtar's response, the Defendants argue that this is a non-core proceeding based on the nature of Epixtar's claims. As they state in their "Conclusion," "In view of the foregoing, it is respectfully submitted that the Plaintiff's **claims against the McClain Defendants** should be declared non-core proceedings." (Emphasis added. Reply, pg. 10, DE 268.)

defendant. For example, in In re Toledo,170 F.3d 1340 (11th Cir. 1999), the Eleventh Circuit decided whether a third-party adversary proceeding against multiple defendants (the trustee, the debtors themselves, and a bank) relating to entitlement to proceeds of the sale of an asset and the validity of a lien, was a core or non-core proceeding. It analyzed the issue based on the nature of the claim brought in the proceeding, "to determine the validity, priority, and extent of liens on the Partnership Property," which it held was not a claim "arising in" or "arising under," and, accordingly, was non-core. Id., at 1349 - 1350. In reaching that conclusion, it did not consider the claims against each defendant separately.

Lockridge, et al. v. Conseco Finance Servicing Corp, et al., 303 B.R. 449 (D. Ariz. 2003), specifically addressed the nature of the determination to be made by a bankruptcy court as to whether a proceeding is core or non-core. As it stated:

> It remains to determine whether the bankruptcy jurisdiction that exists is core or noncore. . . . But even without such consent the third party complaint should be deemed to be core. This is because under § 157(b) the core determination is made with respect to the entire proceeding, not with respect to each particular claim made within a proceeding. "Proceeding" is a term of art that refers to adversary proceedings, which are defined by Bankruptcy Rule 7001. Section § 1334(b) makes clear that jurisdiction exists, or does not exist, for the entire "proceeding," and the premise of both § 1367 and Gibbs is that even third party actions may be deemed to be part of "the same case or controversy." Nothing in § 157 suggests that "core proceeding" is used in any less-inclusive sense, to apply only to portions or certain claims pending in a case or proceeding. Consequently if the proceeding is core because, for example as in this case, it arises from a trustee's lien avoidance action, which is specifically defined to be "core" by § 157(b)(2)(H) & (K), the entire "case or controversy" must be core.

Id., at 456.

In any event, even looking at the claims against each Defendant separately, the Court holds that they are all core. For the reasons stated above, a malpractice action

by the debtor against its professionals is a core proceeding. Each of the Defendants is alleged in Count I to have violated his or its professional duties to Epixtar as Debtor. Count II alleges a second claim against McClain, for breach of the engagement agreement with Epixtar as Debtor, arising out of the same relationship and conduct which, accordingly, is also part of the core proceeding. In conclusion, it is

**ORDERED AND ADJUDGED** that this proceeding, as against all Defendants, is a core proceeding. As provided by the District Court's Order, the Defendants will be entitled at the conclusion of all pretrial proceedings to a determination whether the reference should be withdrawn for the purpose of a trial. That determination will be made separately for each Defendant.

###

**Copies furnished to:**

Norman A. Moscowitz, Esq.
Fla. Bar No. 765643
nmoscowitz@mmmpa.com
MOSCOWITZ & MOSCOWITZ, P.A.
Counsel for Plaintiff, Epixtar Corp.
1111 Brickell Avenue, Ste 2050
Miami, FL 33131
Telephone: (305) 379-8300
Facsimile: (305) 358-1221


Norman A. Moscowitz [Attorney Moscowitz is directed to serve a copy of this order upon all interested parties and file a certificate of service].