UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re                                   CASE NOS.  05-42040-BKC-AJC through
                                                  05-42049-BKC-AJC
EPIXTAR CORP.,                                    (Jointly Administered)

        Debtor.

                                        CHAPTER 11

_____/

EPIXTAR CORP.,                          ADV. No.  08-01208-AJC

        Plaintiff,

v.

MCCLAIN & COMPANY, L.C.,
CBIZ, INC., and
MICHAEL DESIATO,

        Defendants.
_____/

## **EPIXTAR CORP.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Epixtar Corp. ("Epixtar") through undersigned counsel, respectfully moves, pursuant to pursuant to Fed.R.Civ.P. 56(a) and Bankruptcy Rule 7056, for entry of summary judgment as to liability on Count I against Defendant CBIZ, Inc. ("CBIZ") (tortious interference with contract) and on Count II against Defendant McClain & Company, L.C. (McClain") (breach of contract) on the ground that there is no genuine issue of material fact as to the Defendants' liability on those Counts.

As to Count I, CBIZ caused McClain to stop work on the Epixtar audit, in breach of McClain's engagement agreement with Epixtar, by depriving McClain of the personnel and other

resources necessary to complete the audit, an act which violates Florida State law, CBIZ's own policies and procedures, CBIZ's own contractual obligations to McClain, and CBIZ's representations to the SEC as to the independence of McClain and all others of CBIZ's affiliated auditing firms. This conduct is particularly egregious as it caused McClain, a Bankruptcy Court professional, to default on its obligations to all parties, not just the debtor, in a Chapter 11 bankruptcy. The evidence of CBIZ's tortious conduct is the testimony of the CBIZ manager who carried it out.

As to Count II, McClain's termination of the audit due to CBIZ's denial to it of personnel and resources is a breach of McClain's auditing agreement with Epixtar which does not permit a refusal to complete the audit on that basis.

## INTRODUCTION

When McClain moved for leave to resign from the Epixtar audit, just days before it was due to be completed, it told the Bankruptcy Court that it had to do so because of the actions of Epixtar which compromised its independence and demonstrated that Epixtar was not a trustworthy client. However, as Epixtar's Statement of Material Facts shows, that is not why McClain resigned. McClain did so because CBIZ refused to permit CBIZ's employees, leased to McClain, to finish their work on the audit. CBIZ did so in violation of its own contract with McClain, pursuant to which it is obligated to provide personnel and resources to McClain to perform its auditing engagements. CBIZ's actions were also in violation of its own guidelines and policies which do not permit it to interfere with the performance of the auditing engagements of the auditing firms which are affiliated with it. Most important, this conduct was in violation of Florida State accountancy law, which prohibits a firm such as CBIZ from dominating or controlling the practice of a Florida auditing firm. It further violates CBIZ's representations in its SEC filings that it does not dominate or control its affiliated auditing firms.

2

CBIZ's knowing and intentional violation of its contract with McClain, of its own guidelines and procedures and of Florida law, constitutes tortious interference with McClain's audit engagement with Epixtar. To prove commission of the tort it is sufficient to prove it is intentional; it is not necessary to show CBIZ's motivation. However, the evidence is undisputed that the Epixtar engagement, from its beginning in January, 2006, was an impediment to the acquisition of McClain by Meyer Hoffman & McCann ("MHM"), a national auditing firm affiliated with CBIZ which had already acquired the practices of most of the regional auditing firms similarly affiliated with CBIZ. In January, MHM called off its acquisition of McClain because of its dissatisfaction with the Epixtar engagement, a fact not disclosed to the Court (or to Epixtar) when the McClain retention application was filed with the Court in February. In late March, MHM made clear it would not resume acquisition discussions so long as Epixtar was a McClain client. In early April, CBIZ caused McClain to stop work on the Epixtar engagement, in violation of its agreement with Epixtar, and by the end of the month Epixtar was no longer a client. A month later, MHM resumed negotiations, and at the beginning of 2008, it acquired McClain's practice.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment "when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The applicable substantive law determines which facts are "material" and which are irrelevant. Id. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. . . . Factual disputes that are irrelevant or unnecessary will not be counted." Id. The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252; Bishop v. Birmingham Police Dep't, 361 F.3d 607, 609 (11th Cir. 2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Celotex v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001).

As shown below, there are no genuine issues of material regarding CBIZ's liability for tortious interference and McClain's liability for breach of contract.

### I.  CBIZ Tortiously Interfered With McClain's Auditing Engagement With Epixtar.

The tort of intentional interference with a contract is committed by a person "who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third party by inducing or otherwise causing the third person not to perform the contract . . ." Gossard v. Adia Services, Inc., 723 So.2d 182, 184 (Fla. 1998), citing Restatement (Second) of Torts § 766.[1]  As the Restatement explains,

> One may not, however, intentionally and improperly frustrate dealings that have been reduced to the form of a contract.   When the interference is with a contract, an interference is more likely to be treated as improper . . .

---

[1] As Gossard notes, Florida defines the tort of intentional interference with a contract consistent with Restatement (Second) of Torts.  Id.

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

The interference is "intentional" "if the actor acts for the primary purpose of interfering with the performance of the contract, and also if he desires to interfere, even though he acts for some other purpose in addition." Id., Note j.

There is no "technical requirement as to the kind of conduct that may result in interference. . . . Interference with the third party's performance may be by prevention of the performance, . . . , by depriving him of the means of performance . . . " Id., Note k.

Under Florida law, the elements of a claim of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla. 1994.) The defendant may not be a party to the contract. Genet Co. v. Annheuser- Busch, Inc., 498 So. 2d 683, 684 (Fla. 3d DCA 1986). The elements are met here.[2]

First, McClain's engagement agreement with Epixtar was contractual, and obligated it to perform an audit of Epixtar's 2005 financial statements, to be included in Epixtar's 10-K filing, due on March 31, 2006. CBIZ was not a party to this agreement. (Paragraph 6.)[3] Second, CBIZ was aware of this agreement, during its entire duration. It was involved in discussions with McClain and MHM in January, concerning the engagement's significance to the MHM acquisition discussions with McClain and MHM's dissatisfaction with McClain's handling of the Epixtar engagement. (Paras. 20 - 22.) CBIZ was aware of MHM's decision in late January/early February to terminate the McClain acquisition, due to its handling of the Epixtar engagement.

---

[2] Damages are not within the scope of this motion.

[3] Paragraph references are to Epixtar's Statement of Material Facts.

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

(Paras. 23 - 24.)  It was aware of the communications between McClain and MHM in February concerning the Epixtar engagement.  (Para. 25.)  And, of course, it participated in discussions with McClain and MHM concerning Epixtar leading up to, and following Reibstein's directive to remove CBIZ's leased employees from McClain's Epixtar audit.  (Paras. 33 - 37.)

Third, CBIZ, by the acts of its manager, Reibstein, knowingly and intentionally interfered with the audit agreement by removing its personnel from the audit, on or about April 8, 2006, at a point when the audit was substantially completed, and shortly before Epixtar's 10-K was due to be filed.  Reibstein did so, understanding that his directive stopped the McClain audit.  As he testified:

> Q.  So you prohibited CBIZ employees from performing attest services for [Epixtar]?
> A.  I prohibited CBIZ employees from performing any service to that client under the administrative service agreement and under the direct engagement request for that client.
>
> \*     \*     \*     \*     \*
>
> **Q.  You were the person that actually stopped the engagement, yes?**
> **A.  Yes.**
>
> \*     \*     \*     \*     \*
>
> Q.  Well, you stopped the engagement and were the reason why the services were never completed.  You told the Miami office that they couldn't use staff to complete that engagement, correct?
> A.  Yes.
> Q.  So to the extent that there's liability arising out of that, it's your fault?  I mean, you made that decision, correct?
> A.  Indeed.

(Emphasis added.  Paras. 36 - 37.)

That interference by CBIZ was improper and unjustified.  First, the decision whether to withdraw from an audit is, pursuant to McClain's policies and procedures, a decision to be made by the McClain audit partner, not CBIZ.  (Para. 16.)  Accordingly, the decision was in violation of Florida law, which prohibits such control and domination over the practice of a Florida auditing

6

firm. (Para. 13.) Furthermore, Reibstein's decision contradicts CBIZ's representations in its SEC

filings that it does not dominate or control its auditing firm affiliates. (Para. 15.)[4] Moreover, the

decision was in violation of CBIZ's own guidelines and procedures which prohibit it from

removing its personnel from an audit engagement being performed by an affiliated CPA firm, here

McClain.[5] As the guidelines and procedures state:

> The staffing of associated CPA firm attest engagements are within the exclusive
> control of the CPA firm Technical Director or the CPA firm's designee, and no
> Company staff member on a CPA firm engagement can be disciplined, removed
> from the engagement or terminated without the consent of the CPA firm Technical
> Director or the CPA firm's designee.

(Para. 38.) Lastly, the decision was a breach of CBIZ's own administrative services agreement

with McClain, which contractually obligates it to provide personnel to McClain, at its request, for

performance of its auditing engagements. (Paras. 9 - 10.)  The interpretation of a contract on

summary judgment is a matter of law for the court.  DEC Elec., Inc. v. Raphael Constr. Corp., 558

So. 2d 427, 428 (Fla. 1990);  Amtrak v. Rountree Transp. & Rigging, 286 F.3d 1233, 1262 (11th

Cir. 2002).  Nonetheless, it is noteworthy that both McClain and CBIZ understood that the

agreement obligated CBIZ to provide personnel at McClain's request.  As McClain's compliance

manual states:

> The Administrative Services Agreement between our CPA firm and CBIZ
> states that CBIZ shall make adequate staff available to our CPA firm upon request.
> CBIZ is therefore contractually obligated to provide sufficient and sufficiently
> qualified staff to meet the needs of our CPA firm.

---

[4] As Restatement (Second) Torts states, "[c]onduct specifically in violation of statutory
provisions or contrary to established public policy may for that reason make an interference
improper."  See, § 767, Note c. See, also, Mobile Mechanical Contractors Association v.
Carlough, 456 F.Supp. 310, 329 - 331(S.D. Ala. 1978), reversed, in part, (on the ground of
preemption of state law claims by the NLRA), 664 F.2d 481, 489 (5th Cir. 1981).

[5] CBIZ's own guidelines and procedures require that the policies and procedures of the
affiliated auditing firm take precedence. (Para. 14.)

7

(Para. 10.)  As Reibstein testified:

> Q. What is CBIZ required to do under the [administrative services] agreement with regard to provision of personnel and other services?
>
> A. It is required to provide personnel and full support for the CPA firm in the conduct of a particular client engagement.
>
> Q. So, for example, on an audit, what kind of personnel would that mean?
>
> A. It would depend on the specifics of each audit engagement.
>
> **Q. In doing an audit, would that mean – would that include providing the CPAs and auditing staff?**
>
> **A. If it were required, yes.**
>
> **Q. Required as defined by whom?**
>
> **A. By the CPA firm.**

(Emphasis added.  Para. 10.)

None of the above was disclosed to the Court or to Epixtar.  Instead, McClain represented to the Court that it had to withdraw due to the misconduct and untrustworthiness of Epixtar.  It also failed to disclose that the Epixtar engagement was the primary impediment to the completion of MHM's acquisition of McClain, which MHM had first broken off in January, because of the Epixtar engagement.  (Paras. 23-25.)  The negotiations resumed a month after McClain was permitted to resign by the Court, leading to MHM's acquisition of McClain's practice on January 1, 2008. (Paras. 47-50.)

As a result of Reibstein's conduct, CBIZ is liable for McClain's failure to complete the Epixtar audit engagement.  As Reibstein candidly testified:

> There were engagement activities initiated that were never completed, and the company could have taken the position that the failure to complete those procedures could have resulted in the delay of filing of required public information and, therefore, create damages to the company as a result of those delayed filings, all of which could have – could have and still could create liability.

(Paragraph 36, n. 5.)

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

In sum, CBIZ is liable for tortious interference with McClain's auditing engagement with Epixtar.

## II. McClain Breached Its Auditing Engagement Agreement With Epixtar.

As the Court of Appeals recognized in <u>Grupo Televisa, S.A. v. Telemundo Communs. Group, Inc.</u>, 485 F.3d 1233, 1243 (11th Cir. 2007), a party who has been harmed by tortious interference with its contract may also seek a remedy for the breach itself. As the Court stated, "a plaintiff may maintain an action against a third party for tortious interference and a separate action against another party for breach of contract. Both the breaching party and the party who induced that party to breach his contract are wrongdoers and are liable to the plaintiff for harm. <u>Restatement (Second) of Torts</u> § 766 cmt. v. (1979)." Here, McClain breached its audit engagement with Epixtar.

To succeed on its breach of contract claim, Epixtar must establish (1) the existence of a valid contract; (2) a material breach of the contract; and (3) damages.[6] <u>See Brooks Tropicals, Inc. v. Acosta</u>, 959 So.2d 288, 292 (Fla. 3d DCA 2007). Each of these elements is met here.

First, Epixtar and McClain entered into a contract evidenced by their Engagement Letter dated January 11, 2006. (Para. 6.) The Court approved the retention on March 15, 2006. (Para. 7.)

Second, McClain stopped work on the audit engagement on or about April 8, 2006, before the audit was complete, and moved to withdraw on April 11, 2006. (Paras. 37, 39 - 40.) McClain told the Court that it was withdrawing because Epixtar had retained its COO who had pleaded guilty to a sexual offense, and because Epixtar had used inaccurate language in a motion for extension it had filed with the SEC. In fact, as the undisputed facts show, McClain stopped work on the audit because CBIZ removed its personnel who had been conducting the audit. (Para. 36.)

[6] See n.1, <u>supra</u>.

This violated both state regulations which provide that a CPA firm operating in Florida cannot be dominated by a firm such as CBIZ which is mostly owned by persons who are not CPAs (Para. 13), and CBIZ's guidelines and procedures which prohibit such interference.  (Para. 14.)  More important, as to McClain's liability, this interference violated McClain's own internal policies and procedures which require that McClain's engagement principal, here Urban, decide matters of withdrawal and for McClain's technical director, also Urban, to "resolve all independence, integrity and objectivity issues and to require CBIZ to adopt that resolution." (Para. 16.)  Thus, McClain acquiesced here in a violation of its own policies and procedures.  Accordingly, there is no justification under the engagement agreement for the breach.

In sum, the undisputed material facts demonstrate McClain's breach of the audit engagement agreement with Epixtar.

### III. <u>Conclusion</u>

In sum, for all the above reasons, Epixtar respectfully requests that its motion for partial summary judgment be granted.

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

**I HEREBY CERTIFY** that the undersigned attorney is appearing pro hac vice in this matter pursuant to court order dated May 9, 2007.

Respectfully submitted,
MOSCOWITZ & MOSCOWITZ, P.A.
Counsel to Plaintiff Epixtar Corp.
Mellon Financial Center, Suite 2050
1111 Brickell Avenue
Miami, Florida  33131
Tel: (305)379 - 8300
Fax: (305)379 - 4404

By: s/Norman A. Moscowitz
    Norman A. Moscowitz
    Florida Bar No.: 765643
    nmoscowitz@mmmpa.com
    Jane W. Moscowitz
    Florida Bar No.: 586498
DATE: May 22, 2009    jmoscowitz@mmmpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 22, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.   I also certify that the foregoing document is being served this day on all counsel of record identified below, either via transmission of Notices of Electronic Filing generated by CM/ECF or if not authorized to receive electronically Notices of electronic filing, sent via e-mail:

Kenneth S. Pollock, Esq.
Shendell & Pollock, P.L.
621 NW 53rd Street, Ste 310
Boca Raton, FL 33487

Samuel S. Lewis, Esq.
4000 Ponce de Leon Blvd., Suite 570
Coral Gables, Florida 331461

Jerry M. Markowitz, Esq.
Ross R. Hartog, Esq.
Markowitz, Davis, Ringel & Trusty, P.A.
9130 S. Dadeland Blvd, Ste 1225
Miami, FL 33156

  s/Norman A. Moscowitz  
Norman A. Moscowitz

**MOSCOWITZ & MOSCOWITZ, P.A.**
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re                                          CASE NOS.  05-42040-BKC-AJC through
                                               05-42049-BKC-AJC
EPIXTAR CORP.,                                 (Jointly Administered)

       Debtor.

                                               CHAPTER 11

_____/

EPIXTAR CORP.,                                 ADV. No.  08-01208-AJC

       Plaintiff,

v.

MCCLAIN & COMPANY, L.C.,
CBIZ, INC., and
MICHAEL DESIATO,

       Defendants.

_____/

## PLAINTIFF EPIXTAR'S STATEMENT OF MATERIAL FACTS
## IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Epixtar Corp. ("Epixtar"), through undersigned counsel, submits this statement of undisputed material facts in support of its motion for partial summary judgment.

### The Parties

1.     Epixtar, a Florida corporation, is a public company which has been in Chapter 11 bankruptcy in this Court since October 6, 2005.  (Defendants' Answer to amended complaint, ¶¶ 1 & 5, Exhibit 1.)  Until June 12, 2006, Epixtar was listed for trading on the NASDAQ Bulletin Board.  (Nasdaq Hearing Transcript, Exhibit 2.)

2.      Defendant CBIZ is a public company incorporated in Delaware with its principal executive office located in Cleveland, Ohio. (Answer, ¶ 7, Exhibit 1.)  It provides financial services, non-audit accounting and various other business services.  (Gleespen Depo., p. 25, Exhibit 3.)

3.      Defendant McClain is a Florida limited liability company with offices located in Miami, Florida.  McClain is engaged in the business of providing audit services. (Answer, ¶ 6, Exhibit 1.)

### McClain's Audit Engagement With Epixtar

4.      When Epixtar filed for bankruptcy, its prior long-time auditor, Rachlin, Cohen and Holtz LLP ("Rachlin"), withdrew, because it was a creditor.  (Lamplough Depo., pp. 26 - 27, Exhibit 4; Rachlin's letter to Epixtar, January 10, 2006, Exhibit 5.)

5.      On or about January 9, 2006, Epixtar agreed to engage McClain to review its financials for the third quarter of 2005 for its SEC 8-K filing, due January 13, 2006.  (Exhibit 6.)

6.      On January 11, 2006, Epixtar and McClain executed an engagement letter ("the Engagement Letter") prepared by McClain.  Pursuant to the Engagement Letter, McClain agreed to audit Epixtar's financial statements for the year ending December 31, 2005.  (The Engagement Letter, Exhibit 7; Desiato Depo. 2, pp. 208 - 211, Exhibit 8.)  The terms and conditions governing the audit are set forth in the Engagement Letter.  (Desiato Depo. 2, pp. 210 - 211, Exhibit 8.)  The audit was to be done for Epixtar's annual SEC 10-K filing, due March 31, 2006.  CBIZ was not a party to the auditing engagement.

7.      On February 10, 2006, Epixtar filed an application to the Court to authorize its retention of McClain retroactive to January 10th.  (Application For Authority To Retain McClain, DE 229, Exhibit 9.)  On March 15, 2006, the Court entered its order approving Epixtar's retention of McClain as its auditor.  (Order, DE 265, Exhibit 10.)

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

8.     Pursuant to these agreements, McClain provided auditing and review services to Epixtar. (Yin Law Depo., p. 21, Exhibit 11.)  As explained more fully below, infra, ¶ 10, McClain employed CBIZ personnel and resources in the performance of the audit.

### The Relationships Among And Between CBIZ, McClain and MHM

9.     The relationship between CBIZ and McClain is largely governed by an administrative services agreement ("ASA") which has been in effect since in and around 1998, when CBIZ acquired McClain's accounting and financial services practice, referred to here as "CBIZ SF." (The ASA, Exhibit 12; Desiato Depo. 1, pp. 19, 28 - 30, Exhibit 13.)  The ASA is a contract. (Reibstein Depo. 2, pp. 35 - 36, Exhibit 14.)  Pursuant to this ASA, CBIZ provides resources and services to McClain, including but not limited to the leasing of staff, administrative functions such as office management, bookkeeping and accounting, marketing and promotional materials, and the provision of office space and office equipment. (Desiato Depo. 1, pp. 28 - 29, Exhibit 13; Desiato Depo. 2, p. 240, Exhibit 15.)  In sum, "all the people, all the office space, all the equipment is provided by CBIZ.  And then a portion of the billings for the attest work is then paid to CBIZ in exchange for all the people and all the labor and all the equipment." (Gleespen Depo., p. 27, Exhibit 16.)

10.     McClain engages in its audit and attest practice using CBIZ's personnel and services – including McClain's own partners who are CBIZ employees. (Gleespen Depo., p. 52, Exhibit 17; Answer, ¶ 14, Exhibit 1; ASA, ¶ 2, Exhibit 12; Desiato Depo. 1, pp. 26 - 29, Exhibit 18; Desiato Depo 2, p. 240, Exhibit 15; Yin Law Depo., pp. 4 - 5, 13 - 14, 71, Exhibit 19; Sahr Depo., pp. 17 - 19, 21, Exhibit 20.)  Pursuant to the ASA, CBIZ is required to provide such services and personnel as needed by McClain to carry out and perform its auditing engagements.

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

(ASA, e.g., ¶ ¶ 2(f), 4, Exhibit 1; Reibstein Depo. 2, pp. 41 - 42, Exhibit 21.[1])    As McClain's

policies and procedures manual also states:

> The Administrative Services Agreement between our CPA firm and CBIZ
> states that CBIZ shall make adequate staff available to our CPA firm upon request.
> **CBIZ is therefore contractually obligated to provide sufficient and sufficiently**
> **qualified staff to meet the needs of our CPA firm.**

(Emphasis added.  McClain Manual, SP 06946, Exhibit 22.)

11.    The ASA specifically provides that CBIZ's provision of personnel and services

to McClain does not permit it to control McClain's conduct of its auditing practice. (ASA, ¶3,

Exhibit 12.)  Moreover, the ASA specifically provides that McClain is to conduct its audits

pursuant to its own policies and procedures, not CBIZ's. (ASA,¶ 4, Exhibit 12.)

12.    Pursuant to the ASA, McClain staffed the Epixtar audit with CBIZ employees.

(Reibstein Depo. 2, pp. 63 - 64, Exhibit 23; Yin Law Depo., pp. 13 - 14, 22, Exhibit 24; McClain

audit planning memo, Exhibit 25; Sahr Depo., p. 21, Exhibit 26;[2] Hancock Depo., p. 105, Exhibit

---

[1] As Reibstein testified:
Q. What is CBIZ required to do under the [administrative services] agreement with regard
   to provision of personnel and other services?
A. It is required to provide personnel and full support for the CPA firm in the conduct of
   a particular client engagement.
Q. So, for example, on an audit, what kind of personnel would that mean?
A. It would depend on the specifics of each audit engagement.
**Q. In doing an audit, would that mean – would that include providing the CPAs and**
   **auditing staff?**
**A. If it were required, yes.**
**Q. Required as defined by whom?**
**A. By the CPA firm.**

(Emphasis added.  Reibstein Depo. 2, pp. 41 - 42, Exhibit 21.)

[2] As Michael Sahr testified:
Q. Routinely in its providing its services to its clients, did McClain lease and use
   the CBIZ employees to carry out those services?
A. Yes.
Q. Any exceptions to that?

4

27.)

13.    Florida law requires McClain to be independent from CBIZ in the conduct of its

audit practice. Pursuant to Fla. Stat. § 473.309, CBIZ is prohibited from practicing public

accounting in Florida because at least 51% of CBIZ's shareholders are not CPA's. (Fla. Statute §

473.309, Exhibit 28.) Pursuant to this same statute, CBIZ is prohibited from owning, dominating

or controlling McClain, a Florida CPA firm. (Gleespen Depo., pp. 46 - 49, Exhibit 29.)

14.    The ASA is intended to conform to these requirements of Florida law, which are

intended to insure the independence of Florida auditing firms.  In addition, in conformity with

these legal requirements, CBIZ represents in its written guidelines and policies that the

performance of audit and attest functions for clients of its affiliated CPA firms, such as McClain,

is under the sole and absolute direction, control and supervision of those CPA firms.  Moreover,

in furtherance of those requirements, CBIZ acknowledges that in the event of any conflict between

CBIZ's policies and procedures and those of its affiliated auditing firms, including McClain, the

policies and procedures of the auditing firm, here McClain, take precedence.  As CBIZ's Quality

Control Manual states:

> The CBIZ subsidiary provides the CPA firm with professional or other personnel the firm
> needs to undertake its engagements, in accordance with the ASA between each CPA firm
> and one or more CBIZ Business Solutions Companies ["BSC"][3].  . . . **CBIZ employees**

---

> A.  I am not aware of any.
> Q.  That was the general routine and consistent practice of McClain's business
> with CBIZ?
> A.  I am not aware of it ever being anything else but that?
> \*    \*    \*    \*    \*
> Q.  When McClain got engagements, it was automatic the engagements would be
> staffed by CBIZ employees?
> A.  Yes.

[3] CBIZ SF is the "BSC" in Miami which provides services and personnel to McClain.
CBIZ SF is a wholly-owned subsidiary of CBIZ. (Gleespen Depo., p.50, Exhibit 30.) Its
revenues, along with those of all other CBIZ subsidiaries, are consolidated in CBIZ's financial

> who provide services through the CPA firm are under the sole and absolute direction, control and supervision of the CPA firm's CPA owners in connection with their services provided to or through the CPA firm. . . .
>
> The CPA firm standards, policies, and procedures take precedence over the BSC manual provisions in the case of a conflict. . . .

(Emphasis added.  CBIZ Manual, SP 06854, Exhibit 32; Gleespen Depo., pp. 69, 75 -76, Exhibit 33.)

15.    CBIZ similarly represents in its SEC filings that it does not exercise control over its affiliated CPA firms. (CBIZ 10-K, Exhibit 34; Gleespen Depo., pp. 63 - 64, Exhibit 35.)

16.    McClain's guidelines and procedures similarly provide for its supposed independence from CBIZ.  They state, among other matters, that the decision whether to accept or reject a client is made by the engagement partner.  (McClain Manual, SP 06950, Exhibit 36.)  As the Manual also states, "The engagement principal is responsible for deciding whether to withdraw from an engagement . . ." (McClain Manual, SP 06950, Exhibit 36.)  In the event of a disagreement over such matters with CBIZ, McClain's decision is to prevail.  As the Manual states:

> To the extent there is any conflict between the provisions of the quality control of our CPA firm and CBIZ, the policies and provisions of the CPA firm prevail.  The technical director of our CPA firm has the authority to resolve all independence, integrity and objectivity issues and to require CBIZ to adopt that resolution.

(McClain Manual, SP 06944, Exhibit 36.)

17.    William Urban was both the engagement partner on the Epixtar audit and McClain's technical director.  (McClain Manual, SP 06945, Exhibit 37; Desiato Depo. 1, pp. 41 - 43, Exhibit 38; Desiato Depo. 2,  pp. 210 - 211, Exhibit 39; Application For Authority To Retain McClain & Company, L.C., DE 229, Exhibit 9.)

---

statements.  (Gleespen Depo., p. 33, Exhibit 31.)

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

18.    CBIZ maintains a similar formal relationship with Meyer, Hoffman, McCann, P.C., ("MHM"), an auditing firm whose home office is in Kansas City, Kansas. CBIZ provides personnel and services to MHM under an administrative services agreement similar to the one it has with McClain. Since 1998, MHM has become a national firm by acquiring or merging with most of the other regional CPA firms with which CBIZ has also entered into such administrative service agreements. William Hancock ("Hancock") is president of MHM. (Hancock Depo., pp. 19 - 26, 35 - 36, Exhibit 40; Gleespen Depo., pp. 28 - 29, Exhibit 41.)

### The McClain/MHM Merger Negotiations And The Epixtar Audit

19.    In  around early January, 2006, MHM and McClain were in negotiations for the acquisition by MHM of McClain's practice. At that time, McClain was one of the few remaining CPA firms affiliated with CBIZ which MHM had not yet acquired. (Hancock Depo., pp. 40 - 42, Exhibit 42.)    MHM had already made a preliminary acquisition offer (Answer, ¶ 29, Exhibit 1) and it and McClain were very close to reaching an agreement. (Hancock Depo., pp. 46 - 47, Exhibit 43.) Saul Reibstein ("Reibstein"), CBIZ's eastern regional manager who oversaw CBIZ's relationship with CBIZ SF  (Desiato Depo. 1, p. 31, Exhibit 44; Reibstein Depo. 1, pp. 25 - 26, Exhibit 45; Reibstein Depo. 2, pp. 18 - 19, Exhibit 46; Gleespen Depo, pp. 56 - 57, Exhibit 47), participated in these negotiations on behalf of CBIZ in order to facilitate the completion of the MHM/McClain transaction. (Hancock Depo., pp. 41- 44, 49, Exhibit 48.) Reibstein encouraged the merger to take place. He believed that the merger would be to CBIZ's benefit. (Reibstein Depo. 1, pp. 78 - 80, Exhibit 49; Desiato Depo. 1, pp. 90 - 91, Exhibit 50.) Both McClain and MHM consulted with Reibstein concerning the negotiations. (Desiato e-mail, Jan. 17, 2006, Exhibit 51; Hancock e-mail, Jan. 26, 2006, Exhibit 52; Desiato Depo. 1, p. 58 - 60, Exhibit 53.) With regard to these negotiations and, more specifically, McClain's Epixtar engagement, Reibstein was acting on behalf of CBIZ. (Gleespen Depo., p.18, Exhibit 54.)

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

20.     An issue of concern to McClain was whether MHM would accept all of its client engagements, as the two firms had different client-acceptance criteria and policies. (Hancock Depo., pp. 59 - 60, 89, Exhibit 55.) On January 17, 2006, Defendant Michael Desiato ("Desiato"), McClain's co-managing principal, wrote to Reibstein and Hancock, asking about the effect on McClain's "revenue targets," which impacted the McClain's principals' compensation, of a decision by MHM not to accept Epixtar as a client. (Desiato Depo. 1, pp. 60 - 65, Exhibit 56; Desiato e-mail, Exhibit 51; Hancock Depo., pp. 87 - 88, Exhibit 57.)

21.     On January 20, 2006, Reibstein, Hancock, Urban, Desiato and others from McClain and MHM, had a conference call in which McClain's Epixtar engagement was discussed. (Answer, ¶ 31, Exhibit 1; Hancock Depo., pp. 91 - 94, Exhibit 58; Hancock e-mail, Exhibit 52; Desiato Depo. 1, pp. 74 - 75, Exhibit 59; Hand-written Note, Exhibit 60; Desiato e-mail, January 19, 2006, Exhibit 61.)

22.     On January 26, 2006, Hancock wrote to Reibstein complaining about McClain's handling of the Epixtar engagement and the failure of the McClain partners to fully disclose during the January 20th conference call that they had already performed a review in connection with Epixtar's SEC 10-Q filing for the third quarter of 2005, which he had discovered independently. Hancock claimed that McClain had not properly undertaken client intake procedures before performing its review. Hancock further noted what he considered to be a number of negative facts about Epixtar, including that it was in Chapter 11, had relatively large losses in 2005, and still owed fees to its prior auditors. (Hancock e-mail, Exhibit 52; Hancock Depo., pp. 94 - 100, Exhibit 62.)

23.     On January 27, 2006, Hancock notified Desiato by telephone that MHM was withdrawing its offer. (Hancock e-mail, Exhibit 63.) The reason was its dissatisfaction with the Epixtar engagement, including the McClain partners' failure to disclose the review work which

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

they had already done for Epixtar. ( Hancock e-mail to Desiato, February 7, 2006, Exhibit 64;

Hancock Depo., pp. 49 - 51, Exhibit 65.)   Hancock held Urban, the McClain audit partner on the

Epixtar audit, primarily responsible for what he viewed as the mishandling of the Epixtar audit

and a lack of candor in the January 20th conference call.  (Hancock Deposition, pp. 55 - 57, 135,

Exhibit 66.)

    24.    On February 4, 2006, MHM confirmed the withdrawal of its offer in writing.

(Hancock e-mail, Exhibit 67; Hancock Depo., pp. 53 - 54, Exhibit 68.)

    25.    Desiato sought to revive the acquisition negotiations.   He believed that Hancock's

criticisms of its handling of the Epixtar engagement were unjustified. (Desiato Depo. 1, p. 85,

Exhibit 69.) On February 4, 2006, Desiato asked Hancock to outline his "specific concerns"

regarding the Epixtar engagement.  (Desiato e-mail, February 4, 2006, Exhibit 70.)  On February

7, 2006, Hancock sent Desiato a memorandum stating these concerns.  (Hancock e-mail, February

7, 2006, Exhibit 71; Hancock Depo., pp. 51 - 52, 58, Exhibit 72.)  On February 22, 2006, Desiato

responded, defending McClain's work on Epixtar, and stating it had been performed under "all

applicable accounting and auditing standards." (Desiato Depo. 1, pp.70 -71, Exhibit 73; Desiato

letter, February 22, 2006, Exhibit 74.)  Hancock remained unpersuaded; he did not, at that time,

agree to reinstate the acquisition offer. (Hancock Depo., pp. 51 - 53, 58, Exhibit 75.)  In

discussions with Hancock, Reibstein expressed disappointment that the deal had fallen through.

(Hancock Depo., pp. 55 - 56, Exhibit 76.)

    26.    McClain did not inform Epixtar of MHM's objections to the way it was conducting

the engagement and to it as a client.   It also did not inform the Court of MHM's objections prior

to the Court's entry of its order on March 15th authorizing its approval.

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

### CBIZ and McClain's Discovery of the
### Criminal Proceeding Against Epixtar's COO

27.      In late January, 2006, with CBIZ and MHM's cooperation, McClain retained an

investigative firm to do background checks of Epixtar's management as part of its audit

procedures. (Desiato Depo. 1, pp. 75 - 78 Exhibit 77; Hancock Depo., pp. 76 - 77, Exhibit 78;

Hancock e-mail, Exhibit 79.)

28.      On January 27, 2006, McClain received a preliminary report from the

investigative firm that showed that Epixtar's COO, Bradley Yeater, had been charged in 2004

with the commission of a felony sexual assault.  (A follow-up written report was sent, dated

February 3, 2006.)  (Scherzer Report, Exhibit 80; Desiato Depo. 1, pp. 96 -98, Exhibit 81.)

29.      On February 22, 2006, Desiato wrote to Reibstein that "[McClain] did the

background checks and there is nothing that is an issue."  (Desiato e-mail, February 22, 2006,

Exhibit 82.)

30.      On March 16, 2006, an MHM partner wrote to Reibstein that he had found out,

through an internet search that Yeater had pled guilty to a felony sexual assault on February 22nd.

(Kostoglian e-mail, March 16, 2006, Exhibit 83.)

31.      On March 24, 2006, McClain first informed Epixtar about Yeater's criminal

conviction.  (McClain SEC filing, April 28, 2006, pg. 2, Exhibit 84.)

32.      Epixtar, in response, told McClain that it would conduct a full investigation into

the matter.  On April 5, 2006, Epixtar reported to McClain that it had conducted an investigation

and had decided to retain Yeater as COO and to disclose the matter in its SEC filings.  (Answer,

¶ 41, Exhibit 1; Transcript, Hearing on April 13, 2006, p. 14, Exhibit 85.)  Epixtar stated that,

while it did not condone Yeater's conduct, it had determined that he was performing his duties

appropriately, could continue to do so, and it was in the best interest of Epixtar, under all of the

Moscowitz & Moscowitz, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

circumstances, to retain him in his position. (Epixtar's 8-K filing, April 24, 2006, pg. 3, Exhibit 86.)

## CBIZ's Interference With McClain's Audit Engagement
## With Epixtar and McClain's Consequent Breach Of The Engagement Agreement

33.    On February 22, 2006, Desiato expressed the concern to Reibstein that "[McClain's] continued involvement with [Epixtar] will jeopardize a future deal with MHM." (Desiato e-mail, February 22, 2006, Exhibit 82.)

34.    CBIZ and MHM viewed Yeater's criminal conviction as a reason why McClain should terminate the Epixtar engagement. (Even before March 16th, when MHM first learned that Yeater had pled guilty, it had concluded that the criminal charges against him would make Epixtar unacceptable to MHM as a client. (Hancock e-mail to Reibstein, February 4, 2006, Exhibit 87.) For example, on March 21, 2006, Reibstein wrote to Desiato,

> All I would like to understand is the thought process behind the decision [by McClain] to do business with [a company that employs] an admitted child molester, someone accused of securities fraud, two guys with significant tax liens against them and various other issues . . . .

(Reibstein e-mail, March 21, 2006, Exhibit 88.)  On March 22, 2006, the same MHM partner who had sent Reibstein the March 15th e-mail, wrote to Reibstein suggesting that he tell McClain "to lose the client." (Kostoglian e-mail, March 22, 2006, Exhibit 89.)  This same MHM partner, with whom Reibstein and MHM were consulting over the Epixtar engagement, strongly believed that Yeater's criminal conviction rendered Epixtar an unacceptable audit client. (Kostoglian Depo., pp. 128 - 129, 136, Exhibit 90.)[4]

---

[4]  During this same period, no McClain partner expressed the view that the Yeater criminal charge or conviction was a reason to terminate the Epixtar engagement.  As noted above, ¶ 33, on February 22nd, Desiato wrote to Reibstein that "[McClain] did the background checks and there is nothing that is an issue."  On March 21, 2006, Michael Sahr, a McClain partner, wrote an e-mail to Reibstein in which he described the nature of the charges against the COO and explained that Epixtar had been unaware of them because it had done its background

11

35.    After receiving Epixtar's decision on April 5th that it would retain Yeater,

Reibstein decided that McClain should terminate its audit relationship with Epixtar, for reasons

similar to those given by MHM. As Reibstein testified:

> Q. Why did you reject Epixtar?
> A. Two primary reasons. Number one, I was not comfortable with the information
> obtained in the background checks of certain of the companies' officers and I did not
> believe that the director responsible [Urban] — the director requesting acceptance of the
> engagement was adequately knowledgeable to service such an engagement.
>                    *    *    *    *    *
> A. I suspended work on that engagement because work had been started before acceptance
> procedures were performed and, therefore, I suspended CBIZ's employees from providing
> services to that client until such time as the acceptance procedures were, in fact,
> performed. And the element of acceptance involving gaining an understanding of the
> background and history of the key officers of the company disclosed to me factors about
> those individuals that made me conclude that they were not people that we should become
> associated with in any way.
> Q. Is that it?
> A. Yes.

(Reibstein Depo. 1, pp. 33, 45 - 46, Exhibit 94.)

36.    Accordingly, on or about Saturday, April 8, 2006, Reibstein, acting on behalf of

CBIZ, prohibited McClain from continuing to use any CBIZ employees and resources to finish the

Epixtar audit. As Reibstein testified:

> Q. So you prohibited CBIZ employees from performing attest services for [Epixtar]?
> A. I prohibited CBIZ employees from performing any service to that client under the
> administrative service agreement and under the direct engagement request for that client.

---

check before the charges were filed. Sahr stated that he was "troubled" by the charges but did
not think he would "fire [his] client immediately" because of such charges. He then discussed
allegations relating to other Epixtar officers which he showed were not material. Sahr concluded
that based on consideration of the above and other factors, McClain decided to "do business with
Epixtar. We have made several other difficult decisions in the past 35 years (none ever dealt
with rape charges) and our feeling in every case was that we were justified in doing business with
the people involved in those cases." (Exhibit 91.) On March 23rd, Sahr, in his capacity as a
CBIZ SF accountant, wrote to Epixtar's counsel regarding CBIZ SF's engagement to do
Epixtar's 2005 tax returns, stating that he expected the work would be completed between April
18th and April 30, 2005. (Exhibit 92.) On April 5, 2006, Sahr wrote to Reibstein that Epixtar's
CEO had told him that "neither the charges nor the plea will in any way effect [the COO's] job
performance which has been remarkable." (Exhibit 93.)

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

(Reibstein Depo. 1, pp. 36 - 39, Exhibit 95.)

The decision was Reibstein's alone.  As Reibstein testified:

> Q.  You were the person that actually stopped the engagement, yes?
> A.  Yes.
>              *   *   *   *   *
> Q.  Well, you stopped the engagement and were the reason why the services were never completed.  You told the Miami office that they couldn't use staff to complete that engagement, correct?
> A.  Yes.
> Q.  So to the extent that there's liability arising out of that, it's your fault?  I mean, you made that decision, correct?
> A.  Indeed.

(Reibstein Depo. 1, pp. 44 - 45, Exhibit 96.)[5]

37.    As a consequence, on April 8th, McClain stopped working on the audit.  By that date the work on the audit was already substantially completed.  (Yin Law Depo., pp. 30 - 31, 47, 52 - 56, Exhibit 98.)[6]

38.    CBIZ's own policies and procedures, which are binding on Reibstein (Gleespen Depo., pp. 77 - 78, Exhibit 100), prohibit it from removing its personnel from an audit engagement being performed by an affiliated CPA firm.  As they state:

> The staffing of associated CPA firm attest engagements are within the exclusive control of the CPA firm Technical Director or the CPA firm's designee, and no

---

[5]  Reibstein acknowledged the nature of the  potential legal liability resulting from his decision, which is precisely the same as alleged in this lawsuit.  As he testified:

> There were engagement activities initiated that were never completed, and the company could have taken the position that the failure to complete those procedures could have resulted in the delay of filing of required public information and, therefore, create damages to the company as a result of those delayed filings, all of which could have – could have and still could create liability.

(Depo. 1, p. 43, Exhibit 97.)

[6]  At the same time, CBIZ SF stopped doing its work for Epixtar.  (Yin Law Depo., pp. 58 - 59, Exhibit 99.)

MOSCOWITZ & MOSCOWITZ, P.A.

Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

Company staff member on a CPA firm engagement can be disciplined, removed from the engagement or terminated without the consent of the CPA firm Technical Director or the CPA firm's designee.

(CBIZ Manual, SP 06870, Exhibit 101.)

39.     On April 10, 2006, McClain notified Epixtar in a conference call that McClain intended to withdraw from its engagement.  (Answer, ¶ 48, Exhibit 1; McClain SEC filing, April 28, 2006, pg. 3, Exhibit 84.)  It did not state that CBIZ had prohibited its personnel from further work on the Epixtar audit.

40.     On April 11, 2006, McClain filed a motion (the "Motion") with the Court seeking leave to withdraw from its engagement with Epixtar.  (DE 303, Exhibit 102.)  The Motion stated two grounds for withdrawal.  First, the Motion stated that Epixtar had filed with the SEC a Form 12B-25 request for extension on the filing of its Form 10-K without the knowledge or consent of McClain, which falsely stated, in effect, that the reason the extension was needed was because McClain could not timely complete its financial statement.  (This was inaccurate since McClain was engaged to audit Epixtar's financial statements, which are to be prepared by Epixtar.)  The second ground was Epixtar's continued retention of Yeater.  The Motion stated that '[a]s a consequence of the actions of Epixtar, McClain does not believe it can complete the audit engagement on behalf of Epixtar.  McClain does not have confidence in the Debtors and no longer believes it is independent." (Motion, p. 3, ¶ 10.)

41.     Epixtar contested the Motion, and the Court held an emergency hearing on April 13, 2006.  At the hearing, McClain conceded that it was not making an allegation of fraud or financial impropriety against Epixtar.  (Transcript, pp. 40 - 41, Exhibit 103.)  McClain restated the two grounds for withdrawal given in the Motion and added, for the first time, as a third ground that, on April 11th, after the filing of the Motion, counsel for Epixtar had written a letter threatening litigation if McClain withdrew which further impaired McClain's independence.

14

(Transcript, pp. 23 - 24, Exhibit 104.)  McClain refused to complete the audit.  At the conclusion

of the hearing the Court directed Epixtar and McClain to mediate and scheduled a further hearing

for April 24, 2006.  (Transcript, pp. 50 - 51, Exhibit 105.)  McClain did not state at the hearing

that CBIZ had prohibited its personnel from further work on the Epixtar audit.

42.    The mediation was conducted on April 19, 2006.  Pursuant to the mediation

Epixtar and McClain agreed that:

> (1) McClain would withdraw its emergency motion; (2) McClain would resign
> effective upon an entry of an Order by the Court and would fully cooperate in the
> Company's transition to new auditors; and (3) the Company and McClain reserved
> all claims and causes of action against each other.

43.    On April 24, 2006, the Court entered an Order reflecting the terms agreed to by the

parties at the Mediation.  (Transcript, April 24, 2006, Hearing, pp. 5 - 6, Exhibit 106; Order, DE

318, Exhibit 107.)

44.     At no time, in its pleadings or in either hearing did McClain or CBIZ inform the

Court that CBIZ, by Reibstein, had caused McClain to resign by depriving it of personnel and

resources to complete the audit engagement.

45.     At no time, in their communications with Epixtar did McClain and CBIZ state to

Epixtar that CBIZ, by Reibstein, had caused McClain to resign by depriving it of personnel and

resources to complete the audit engagement.

46.     On April 28, 2006, McClain made a filing with the SEC in which it stated it was

providing a "full presentation" of its reasons for resigning the Epixtar audit engagement.

(McClain SEC filing, April 28, 2006, pg. 2, Exhibit 84.)  The filing did not include any of the

facts relating to Reibstein's actions depriving McClain of personnel and resources in order to

prevent it from completing the Epixtar audit.

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404

## MHM's Acquisition of McClain's Practice

47.     As of April 24, 2006, Epixtar was no longer a client of McClain.

48.     On or about June 28, 2006, Hancock wrote to Reibstein, following up on an earlier discussion, stating MHM's renewed interest in acquiring McClain's practice.  Reibstein was, again, in favor of the acquisition.  As part of the acquisition MHM would admit as MHM shareholders all of McClain's directors, except for Urban, the McClain principal responsible for the Epixtar audit. (Hancock Depo., pp. 134 - 139, Exhibit 108; Hancock e-mail, Exhibit 109.)

49.     On August 16, 2006, Reibstein wrote a letter to Urban stating he would be terminated from CBIZ.  (Reibstein letter, Exhibit 110.)  A McClain partner terminated from CBIZ must leave McClain as well.  Accordingly, Urban also left McClain.  (Sahr Depo., p. 16, Exhibit 111; Reibstein Depo. 1, p. 135 - 136, Exhibit 112.)

50.     On or about January 1, 2008, MHM acquired McClain.  (Desiato Depo. 1, p. 19, Exhibit 113.)

Respectfully submitted,

MOSCOWITZ & MOSCOWITZ, P.A.
Counsel to Plaintiff Epixtar Corp.
Mellon Financial Center, Suite 2050
1111 Brickell Avenue
Miami, Florida  33131
Tel: (305)379 - 8300
Fax: (305)379 - 4404

By: s/Norman A. Moscowitz
      Norman A. Moscowitz
      Florida Bar No.: 765643
      nmoscowitz@mmmpa.com
      Jane W. Moscowitz
      Florida Bar No.: 586498
May 22, 2009      jmoscowitz@mmmpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 22, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified below, either via transmission of Notices of Electronic Filing generated by CM/ECF or if not authorized to receive electronically Notices of electronic filing, sent via e-mail:

Kenneth S. Pollock, Esq.
Shendell & Pollock, P.L.
621 NW 53rd Street, Ste 310
Boca Raton, FL 33487

Samuel S. Lewis, Esq.
4000 Ponce de Leon Blvd., Suite 570
Coral Gables, Florida 331461

Jerry M. Markowitz, Esq.
Ross R. Hartog, Esq.
Markowitz, Davis, Ringel & Trusty, P.A.
9130 S. Dadeland Blvd, Ste 1225
Miami, FL 33156


_s/Norman A. Moscowitz_
Norman A. Moscowitz

MOSCOWITZ & MOSCOWITZ, P.A.
Mellon Financial Center • 1111 Brickell Avenue Suite 2050 Miami, Florida 33131 • Telephone 305.379.8300 • Facsimile 305.379.4404